Um, and the clerk can call the 1st 10, 3, 4, 4, 7 people versus Sergio Hernandez. And please counsel, identify yourself for us. Good morning, Your Honor. My name is Brian Reyna, Office of the State Appellate Defender. I'll be representing the appellant, Sergio Hernandez. And with your permission, I would just like to request five minutes in rebuttal. That's fine. May it please the Court. The question in this case is whether a reasonably innocent person in Sergio Hernandez's shoes would have felt free to leave police custody before giving a statement at the police station. The trial court's ruling that Hernandez voluntarily went to the police station was based on an erroneous factual finding that he was asked if he wanted to go to the station. The police did not ask Hernandez whether he wanted to go to the station. And this court may make a de novo assessment of whether he was free to leave police custody. Any reasonable person in Sergio Hernandez's shoes would not have felt free to leave. Hernandez invited two police officers to his home to talk about something that had happened the other day. While he was still on the phone with this officer and his partner, 24 officers arrived uninvited from several different jurisdictions in marked and unmarked police cars. At the time, none of the officers had a warrant for Hernandez's arrest. He was not doing anything illegal and there was no probable cause. Yet, five or so officers pulled guns on Hernandez. He was handcuffed, patted down, along with three or four other people who were outside the building, and then, in the officers' own words, detained in a squad car. Counsel, what about the officers' testimony regarding the area being a high-crime area and that's why some of the officers did have their guns drawn and that's why they needed a large number of officers to arrive in the area? Yes, Your Honor. The officers testified that this was a high-crime area and certainly we would take them at their word for that. We recognize that the officers had a right and a responsibility to protect themselves and their fellow officers, but the question here is, what would a reasonable person in Hernandez's shoes have perceived in this situation? So we're not challenging whether the police were justified in doing this, but what we're saying is Hernandez did not consent to go to the police station. There's no evidence of that. I really didn't mean to interrupt you right in the middle of your sentence. I can't speak for anybody else. I don't have that great of a problem with the fact that two different districts or areas, Hanover and Aurora sent police officers there given the fact that there is a gun that's been used to shoot a young woman in the head and kill her, that they have information that that person had, that the defendant had put a knife to her throat several months prior to this, and I think they had information regarding a, although this didn't come out in the motion, I just read this at the trial, and we can consider the trial evidence when we consider the motion, that he had an F, what is it, 150, and they saw an F-150 at the location of the incident shortly before the person was shot. So I don't have a problem with them patting him down, it's nighttime, there's three to five other people out there. My problem is that nobody, not the defense or the state, asked what the conversation was with the defendant before he was put into the car. And I wanted you to address whose responsibility that was to put that evidence in. Was it the defense who was trying the case or had the burden of going for it on the motion to put in? What was said after, because the defendant said, come here, I'm willing to talk to you, I know you're looking for me, sure, come talk to me, and comes outside. My thought when he comes outside is he's willing to talk to them there or possibly somewhere else. This is nighttime. Do you stand on the street in the middle of the night and talk to somebody? But whose responsibility was it to provide to the judge the information of how he got in the car, what the conversation was to get him in the car? Absolutely, Your Honor. At this point in the hearing, it was the state's burden. The defense had established a prima facie showing of an unlawful arrest. How do you think that it was established? The defense put on evidence that Hernandez was taken somewhere, he did not consent explicitly to go. No, the defense did not put on something that he didn't consent. There was no evidence that he consented or he didn't consent. That's what I'm saying. Whose burden was it to tell the trial judge that there was no consent? He said, come and talk to me, and then they took him to talk somewhere, and there's no conversation elicited. I would like to answer your question, Your Honor. It was the state's burden at this point in the motion. The defense had called Lt. Wormies, who testified that the police did not have probable cause or warrant to arrest Mr. Hernandez. There was no explicit consent that the conversation that was elicited that took place between Hernandez and the police, or that the police would come to his house. There's no indication at all that Hernandez would go to the station. The state moved for a directed finding. Counsel argued that she had established a prima facie showing of an unlawful arrest and asked the court to deny the state's motion on that basis. The court denied the motion. The burden shifted to the state. Alternatively, we do have an argument that if this court finds that the burden remained on the defense, because ultimately this is the defense's burden in the motion, that counsel is ineffective for not introducing further evidence. That's what I want you to argue, the ineffective assistance of defense counsel. Yes, Your Honor. I would like to say what did come out, and I'm going to address the ineffectiveness argument, absolutely, is that nobody asked Hernandez if he wanted to go to the police station. He was not given the opportunity of arranging his own transportation, and nobody told him he was free to leave. Now, counsel, if I could interrupt you for one second. When the police arrived, Officer Lopez, who I believe the defendant was a member of the police department, was arrested. He was arrested, but he did not arrive with the other officers on the scene before they did the pat-down, correct? Officer Lopez arrived almost simultaneously with six or seven other officers. He didn't go over to talk to the defendant when they were doing the pat-down, correct? He actually, he said he was with the other officers. He didn't actually speak with them, no. Counsel, my question is, he was in the vehicle talking to Mr. Hernandez. Was Officer Lopez one of those individuals? Not one of the initial officers that approached, but I believe he approached after. My question is, since there was a language discrepancy or difficulty here, who had the conversation with regards to whether or not there was a consent to go into the vehicle? That's my same question. That's the rub for me. Okay. Hernandez indicated when he got to the station that he did not know why he was there and did not want to talk to police. That's not the question. The question is the conversation that took place before he went into the vehicle. Yes. Not when he's at the station, not when he's in the vehicle, before he gets into the vehicle. Hernandez did not tell Hernandez during that conversation that he was free to leave. Nobody asked him if he wanted to go to the station, and he was not given the option of arranging his own transportation. And going back to Judge Lampkin's question, whose burden was it to produce that evidence? At this point in time, it was the state's burden. Defense counsel had established a prima facie showing of an unlawful arrest. The state called Officer Lopez to put on his case. How do we know that there was an unlawful arrest? They assert that there was no arrest. And what's missing from the record is what transpired before Mr. Hernandez went into the vehicle. The state had the burden of putting that evidence on, not because the defense had proved an unlawful arrest, but they had made a prima facie showing by showing that through Lieutenant Wormey's testimony that Hernandez was taken to the station without consenting to doing so at a time when there was no warrant or probable cause to arrest. But how do we know he consented? Or he didn't consent? How do we know that? Because it's in the record that he did not want to be at the station or talk to police. And to address Justice Lampkin... I'm sorry, I haven't read all the volumes of the record and I haven't been able to get the videos, except one of them to look at. I'm not sure if the record is complete and I may have to get the original videos if they are not here. But I don't remember from what I looked at or read anything from him saying when he first got there, I don't want to be there. The transcript I was able to read starts out with him being Mirandized and not at all challenging the fact that he wanted to be there. In fact, he said something like, yeah, sure, that's why. I want to know, I want to help, I want to know what's going on. I'm paraphrasing. Those aren't his words. Exhibit 61 is the transcript of the whole interview. One of the first questions that the detective asked was, do you know why you're here and do you want to talk to us? Hernandez said no. We don't know what he's saying there. You're really taking that out of context. I do have an issue with that. But not the way that you're saying it. You're saying he didn't want to be there. He didn't say that. It was the Miranda ones. They gave me the right to remain silent. Anything you say may be used against you. You have the right to have an attorney. If you can't afford one, one will be appointed to represent you. Understanding these rights, do you wish to talk to us? And the next question, before he answers in the same line, he says, do you know, do you know, or I can't, do you know, or do you know what's going on? The answer is no. I don't know if he's saying no, I don't understand the rights, or no, I don't understand what's going on. But he did not say he didn't want to be there. The question, and you will have access to the transcript, of course, as I recall, was do you know why you're here and do you want to speak to us? And he said no. I'm suggesting that that answers both of those questions. I would like to address the burden question that is on your mind and remind the Court, again, you have a de novo, this is a de novo review, meaning that, as you pointed out, Justice Lincoln, I understand that. Don't tell us what you're going to do. Just go on. I'm sorry. Just go on and do it. I'm so, after reading this, angry at the defense and angry at the state. I really am. I have not seen a case tried so poorly by the state or the defense. I'm very distressed about it. Well, as you point out, Your Honor, let me ask you this. Yes. Isn't the first issue that we have to determine is whether there was an arrest here? Isn't that true? Yes, Your Honor. And then we have to determine from there whether there was probable cause for that arrest. Yes. Although it is, as far as, you know, the state has never argued below or in their briefs that there was probable cause. They've only argued consent. Exactly. So the issue is consent. Absolutely. And to your point, Your Honor, there is an abundance of evidence of what occurred at the station that defense counsel didn't introduce. As I mentioned earlier, when police first arrived at the station, they took Hernandez directly to an interrogation room. In cases such as Booker, other cases where people voluntarily arrive at the station, they're often seated in a waiting area, a conference room while the detectives go about their business, maybe have some coffee. That's not what happened here. How do we know he was directly taken into an interrogation room? That was the testimony of the officers, of Officer Lopez, that he took him directly to an interrogation room. But the question with regards to Officer Lopez's testimony was, he wasn't with the defendant when they transported him to the police station. He was in a separate vehicle. He's talking about the trial. You're talking about the trial now. Let me finish my question. So we don't know when Officer Lopez actually arrives at the police station, if he arrives simultaneously with the defendant or not. We don't know how long the defendant was in the police station before Officer Lopez arrived. So as to Officer Lopez's testimony that he was taken into the interrogation room when Officer Lopez arrived, that might have been possible. We don't know how much time the defendant, Mr. Hernandez, was in the police station before Officer Lopez arrived. Is that correct? Is that correct? No, it is not correct, Your Honor. There isn't a record that says how long the defendant was in the station before Officer Lopez arrived. There's no specific time. But the interrogating detective did testify that he took Mr. Hernandez directly to the interrogation room. So he might have been in a holding area before Officer Lopez arrived, correct? Well, there was no testimony about him being in a holding area. It's certainly possible there's no evidence suggesting that, though. And there's no evidence suggesting otherwise? Well, Detective Hernandez's testimony that he took Mr. Hernandez directly to the interrogation room suggests otherwise. After Mr. Hernandez was taken to the interrogation room, he was read his Miranda rights. This indicates an arrest. The police confronted him, accused him of being the shooter. When Hernandez told them that he was not involved, they called him a liar. They continued to interrogate him and tell them that they had witnesses who could identify him at the scene, that they knew he did something. They pressured him into consenting to a vehicle search and a gun residue test, threatened to take a polygraph exam and a DNA test. They told him where to sit, and they ignored his requests for counsel. In these circumstances, Hernandez was not free to simply walk out of the room. He was never told he was free to walk out of the room. In Anderson, which is cited by the State, Justice Hall wrote a dissent. And one of the factors that she noted in her dissent was that the voluntary arrival transitioned into an unlawful arrest, in part because the defendant was not allowed to go to the bathroom by himself. That applies in this case. And that he was never told that he was free to leave, which was also true of this case. So the evidence that's in the record establishes that Hernandez was not free to leave before he went to the station or after. The State had the burden of presenting evidence he was free to leave. If you find that it was defense counsel's burden, then she was ineffective for failing to do so, where there is an abundance of evidence in the record supporting an argument that Hernandez was not free to leave. Additionally, counsel alleged in her motion facts relating to what happened at trial, but failed to argue them during the hearing and failed to support them with further evidence. It's likely she felt that the overwhelming show of force was sufficient to demonstrate an involuntary detention. Regardless, there was no reason not to submit this evidence when it could only benefit Hernandez. If there are no further questions, Your Honor, we would ask to file or alternatively find counsel ineffective for failing to introduce the plethora of evidence that's available showing that Hernandez could not have simply walked out of the interrogation room. I do have just one additional question. I'd like you to address the issue of the motion to suppress statements. And what you think, if we suppress the statement, what do we do? I mean, are we sending it back or something, if we suppress the statement? In our brief, we request that you suppress the statement and remand for a new trial. If the statement is suppressed, the state should have an opportunity to argue attenuation, and that would be an appropriate form of relief as well. If you wanted to remand for an attenuation hearing, that's in fact what was done in Young and Booker and some other cases. So that would be an alternative form of relief that would be appropriate in this case. All right. Thank you. Thank you, Your Honor. May it please the Court, Counsel Christine Cook, Assistant State's Attorney, on behalf of the people. The issue before this Court is whether, in view of all of the circumstances presented to the trial court, whether he erred in denying the defendant's suppression motion. The facts elicited at this hearing are clear that the trial court did not err in making that ruling. Well, he erred one way, Counsel, certainly in saying that the defendant was asked to go to the station and he voluntarily went to the station. There is not a word in here as to whether he was asked to go to the station. Those words specifically, of course, were never elicited. Not any words close to those. No, but, Justice, in fairness, the testimony at the trial, or even the pre-trial hearing between Lieutenant Wormese and Officer Lopez was that the defendant had invited them over to his house in order to have a conversation. Certainly a reasonable inference can be made that he was going to have a conversation with the police officers about something. Those specific words, no, were never elicited. But a fair inference and a common sense inference would indicate that he was going to Oh, I don't have any problem with him, from the record, agreeing to talk to the police. Right. My problem is, did he agree to go to the station and be in the station for the conversation? Did he agree to get in the police car? Or as counsel for the defendant has raised the issue, we know he had his own car. Because it was seen at the location of the offense. Right. I mean, was he offered to drive his own car? We don't know that. There's a lot of things we don't know. We don't know a lot of things primarily because the defendant never testified. What seemed to be the theory of defense counsel was the theory that by sheer numbers that this motion had to be granted. The defendant never testified. We don't know how many police officers arrived at what time, location, where, if the defendant saw him. Lieutenant Wormley, my problem is that I know, and you know, of course, because you know how to try a case. Lieutenant Wormley could have testified that there were five handover officers.  Right. And nobody ever approached the defendant except one person who went to him and one went to the others. And after we had cuffed him and pat him down for our safety, which we had the right to do, everybody went back. And then, is it Kirby who was supposed to be talking to him? I can't remember. Yes. And then Officer Kirby could have said, and I said, we don't want to stand out here on the street in the middle of the night in the cold, can you go to the station with me? None of that is elicited. Whose burden is this? In this motion, it's always the defendant's burden. It's his ultimate burden. And he didn't establish anything. The four corners of this document in that motion to caution and suppress were that he was arrested in front of his home with no probable cause. It wasn't that he was arrested without probable cause at the police station. That is litigation that was never addressed because that wasn't the theory. That's a whole new theory being floated before this court today, which is wholly improper and should not be addressed. The four corners of this document was that he was arrested by sheer volume of number of officers that appeared to take him to the police station at his invitation, his express invitation, which has never been in dispute. And defendant was unable to ever elicit facts or any law to sustain his motion. Defendant could never meet his burden, and based on this record, cannot ask this court to reverse this decision based on all of the facts that are missing before it today. The facts that were elicited before Judge Fekirada clearly show that his denial of the motion was properly made. There was no evidence to establish that the defendant... There were no facts elicited before the trial court at the motion that would warrant for any basis in which to grant the motion. It was clear from Lt. Wormey's who testified that the defendant was never under arrest at his home. He said, we went there to pick him up, we did not have a warrant, he was not violating any laws, he was transported to the police department in an unmarked car, he was not handcuffed, he was not secured in the back seat, initially he was left in this regular car with nobody there to sit with him, and eventually a plainclothes police officer drove him to the Hanover Park police station during the transport during which he was uncuffed. Let me ask you this question. If we found a valid arrest, would you still be able to preserve your case? That would have to be determined after an attenuation hearing and all of those other things. That's a big question mark I can't answer right now. Also because Justice, there's a lot of things we don't know either. The whole claim about ineffective assistance of counsel for failing to present this alternative theory, that the defendant is presenting snippets and bits of pieces of record in order to cobble together a theory that was never floated at trial. It's not that the defendant is able to establish that he was under arrest at the police station. He can't do that based on this record. It was never litigated. That's an improper thing. The defendant was never threatened at the police station. There's simply no evidence to support anything like that. Again, this is a wholly different claim and we don't have any evidence as to what the police knew when they knew it or what the progress of their investigation was as they were questioning the defendant. What we do have is a redacted copy at the defense counsel's request of his interview at the police station. Using snippets from redacted pieces is an improper way to float a new theory that was never litigated before trial. And clearly based on what is before this court, it is clear that there is no evidence that he was arrested at his home. There is no evidence that he was threatened by the police. And in fact, this contradicts any notion that he was intimidated or threatened. Exhibit number 61, which again, as I note, is a redacted copy, is 153 pages long. They get through pages, several, several pages before he's ever told why he's there. Page 13. We are investigating the death of Rocio. We found her dead. So we need your help to find the person who did this. Counsel, the question I have is their argument tends to be that the reason it's redacted is because there was material in there that pertained to the domestic violence. Yes. And that was irrelevant and that's why the transcript is redacted. Can you address that? Well, we don't have a problem with it being redacted. But on the other hand, defense counsel is attempting to use or make inferences based on evidence that isn't before this court and was not before the trial, not the trier of fact, and basically wasn't before the suppression judge either. That's an improper thing to do. They are misusing evidence that was and was not before the trier of fact in this case. I have another question with regards to the transcript. You indicate that at the station Mr. Hernandez wasn't coerced. But there's various means of coercion. Sure. Before he was placed under arrest, Officer Miranda reiterated that they had done their homework, they had done their investigation, they had talked to people, and they were making inferences whether or not the defendant was actually lying to the police. Wouldn't that be a form of coercion, although it's not physical coercion? It is coercion in the sense that they're trying to get him to make a confession. No, not at all. What they're trying to do, and for probably the first, I want to say, 75 pages of this redacted copy, of course, in my opinion for what that's worth, which is nothing, they're clearly trying to get some kind of a scenario from him, not only where he was, but also who he knew, people that could possibly want to hurt the victim. They talk a lot about the dances she had been to with her brothers, that there was a man at the dance that the defendant was afraid of because this man knew information about the defendant and his family and the defendant was kind of a little nervous about him. And they're clearly trying to get a much bigger picture. There is a point in the record where the defense council even concedes, you know, there's thousands of pages of documents and interviews. The police were interviewing absolutely everybody. And again, we don't know at what point they suspect the defendant if they just are literally bringing him in as to, you know, when's the last time you saw her? Do you know anybody that want to hurt her? They don't get into an interrogation mode and they don't get confrontational with the defendant until much later in the evening when they start talking about the holster that they found in his truck. Well, what about Officer Miranda's statement in the transcript indicating we've done our homework? Sure. I'm assuming they would tell everybody something like that. That's a questioning. That in no way could be considered intimidating or threatening. But isn't he already considered a suspect at that time? We don't know. We have no idea. He could have been considered a suspect an hour into the station. Because again, we don't know where this investigation is unfolding. We don't know what the police officers know when they know it either. This is a blank slate. So to address claims that trial counsel was ineffective for failing to present a motion on an alternative basis that he was seized at some point before his confession is wholly improper in light of the fact that these facts were never litigated. And this court can't engage in pure speculation or conjecture to address that claim now. It's a new theory on appeal. And certainly we can't deem trial counsel incompetent for pursuing the theory, the pretrial theory that she did. Because that's a valid claim, which is being addressed today before this court. So defense counsel today is consenting to the validation of that claim, of pursuing that theory. Now that he wants to pursue an alternative theory, that's a motion for another day in another court at another level. But that cannot be addressed before this court today. What about the Miranda rights in the interrogation room? Right. During the interview? Yes. Miranda rights can be a factor in determining whether somebody has been deemed a suspect or whether they're under arrest. But I'm sure Your Honor is aware that in an investigation, especially a long investigation like this where there could be a possibility, it's more of a default of safety. One never knows what somebody is going to say in an interview room or during the course of interviewing. And this is a better safe than sorry than anything. If they hadn't provided Miranda rights and he would have said something, that would have been... But here with this record that's been provided to this court, it's not clear whether or not Mr. Hernandez really understood the rights that were being read to him. That was never an issue that was litigated either, Your Honor. We don't know that. And we can't base all... I understand this court's frustration with the record. I too am frustrated. There are so many questions that are unanswered. But we can't engage in conjecture and speculation in order to answer those questions. Those facts are not before us. And those are not claims that were ever litigated. And those claims are not before this court now. There is no claim that the defendant did not understand his Miranda rights. That's not an issue before this court. And it was never an issue below. As far as the defendant being read his Miranda rights, he was never threatened into submitting to a gunshot residue test. I would like the court to refer to page 124 of the redacted statement when they explained to him what it is. He talked about having a BB gun sometime earlier and denies the fact that there's a holster. It's not mine. I don't know how it got in my truck. And he actually says, and I quote him, let's shut up and do the test on page 124. Now, earlier when they had asked the defendant, can we search your car? And he was pretty hesitant. Well, I don't know what that means. I don't know if that's legal. That's not an indication to counsel either. Well, he indicated he didn't. I mean, after they explained it to him, he didn't have to do it. He decided not to do it. Right. And apparently no search was done, yet they found a holster in his truck. So I don't know how that transpired either. There's a lot of questions here that I can't answer. I wish I could. But there is no evidence that this defendant was ever threatened at this police station. Was he confronted with facts as their investigation unfolded? Of course he was. I'm sure every witness they had or anybody they had interviewed was confronted with things. The police are trying to figure out who killed this young woman, who executed her in her car. Can I interrupt you for just one second? Absolutely, Justice. Because I'm looking at the very first issue. If there, with the incomplete record that we have regarding that conversation, what happened for him to get into the car and to get to the station, is there anything in the trial record? Because of course we can look at the trial record. Two, is there anything in the trial record that would indicate that he consensually got in the car? Is any of that elicited in this transcript? No. So if we reverse, or if we find that there was not consent, what is your suggestion that we do with the rest of the issues that were not litigated? Well, that's always going to be a problem. At first, I'm sure I would assume an attenuation hearing would have to be held. I honestly don't know. That's a great question. I suppose this Court could do several different things, but the bottom line is the Court doesn't need to do several different things. But we don't have to necessarily reverse. If we find a valid arrest, we could just remand for an attenuation hearing. You could. And this way we're not disturbing anything. You could. There are several novel alternatives, I suppose, that are available to the Court. It is our suggestion that this Court should affirm, based on the facts of this record, the only issue before the hearing judge was whether the defendant was arrested in front of his home. And there was absolutely no evidence to support that motion. The decision to deny the defendant's motion to quash and suppress was absolutely correctly decided based on the facts that were elicited before that judge. And based on the record before this Court, this Court has sufficient evidence to affirm that decision, notwithstanding all of its questions, which I completely understand. There is certainly a sufficient basis to affirm based on the record before this Court. Barring any questions, for those reasons cited in our brief, and those today, the people respectfully request that this Court affirm defendant's conviction for the first degree murder of the victim. Thank you, counsel. Thank you, Your Honors. A few points. The suggestion that it's improper to raise an ineffective assistance of counsel argument really doesn't hold any water. The actual motion that defense counsel filed in the circuit court alleged that Hernandez's statement should be suppressed because he was involuntarily arrested. And counsel actually cited some of what happened at the station, but failed to follow up on presenting evidence of that. She, for instance, alleged that he was photographed, fingerprinted, and otherwise processed. She also alleged that his photographs were used and shown for the purpose of getting an identification of him as a suspect. He was the only suspect here. The state has argued that there was no evidence of involuntariness. And there's an abundance of evidence in this record of involuntariness, both before and after his arrival at the station. In terms of before, as Your Honor observed, there has been there was no testimony that he was ever given a choice of whether to go to the station or that he was ever told he was free to leave. The officers described what happened by saying he was placed, both officers, Lieutenant Lopez and Wormese said he was placed or put in the back of the squad car. And nobody told him the door to that squad car was there. In that situation, it is not reasonable to suggest he could have walked out of that car when he's sitting next to a police officer and there are other police officers who just put him in the car. There are 20-something officers around and more officers arriving. Wormese testified that the 24 were the initial officers. There are more police arriving. As far as the interrogation... I said I don't remember that, so don't make it better than... He doesn't have these people swarming there. I can't remember if he's like 14 or there and maybe 10 or there and maybe together there's 24. I don't know. More people are coming. There's no dispute about that. The swarm of people that are coming, there's no swarm testified to that I can remember. But if we remand for an attenuation hearing, we don't have to get to the issue of ineffective assistance of counsel. That's correct. And you still always have that available. Correct. Your Honor, at the station, Detective... Before we get to the station, with regards to 24 officers, where in the record is there any evidence as to the impact that this had on Mr. Hernandez? I think the evidence in the record showing the impact it had on Hernandez is this. He called the police and offered to talk at his house. He then arrives shortly after at the station and indicates he does not want to be there. That says to me that he did not have a choice or did not think he would have a choice. There are also cases throughout, you know, there are plenty of cases saying the arrival of three officers or six officers or some significantly smaller number of officers demonstrates a show of force in that not just Hernandez but any reasonably innocent person in those shoes. So is it the volume? Is it the number of officers that arrive on the scene? Or is it the fact that some of them had their guns drawn? It's all of this, Your Honor. It's the totality of the circumstances. The question is what would a reasonably innocent person in this situation, given everything that has happened, the arrival of the officers, the guns being pulled on them, the handcuffs being put on... How about on the way to the police station that they switched squad cars? They also transferred him into a different squad car. That's correct. Isn't that a relevant factor? Absolutely, Your Honor. It's relevant. He was not asked if you, there's no evidence suggesting he was asked if he wanted to go into that squad car. There were three or four other people outside of this building who we have no idea if they have any relation to Hernandez or this case and every one of them were taken to the station. There's been no suggestion that those people initiated contact with police and that's definitely a relevant factor in terms of what Hernandez would have thought because he sees all of these officers arrive and everybody outside of this building is taken to the station. Why would he have thought he was any different? For him to walk away or say I don't want to go would have simply been futile at that point. In terms of the transcript, the video was redacted. It is the last hour of the interrogation. From my understanding, and I appear to have a dispute with the State about this, the Exhibit 61 is the transcript of the entire interview. If any portions of that were redacted, it's still over 100 pages of proof of how Hernandez was treated at the station. So the conversation that Officer Lopez is having with regards to the search of the vehicle is in the last hour of the interrogation? That's in the transcript, that's right. No, excuse me, that's in Exhibit 61, which is the transcript. The record shows the counsel had the transcript and the video prior to the hearing. That was evidence that was available. My question is, that conversation that was taking place during the interview, was that towards the end, the hour, the last hour? No, that was towards the beginning. All right, well, there's portions missing out of that transcript with regards to what actually happened. Was there consent? And the record shows that there was a written consent. So when did he give that written consent, and why was that redacted from the transcript? There's a signed written consent in the record for the search of the vehicle. For the search of the vehicle, that is in the transcript. I misunderstood your question, Your Honor. All right, so my question is, why was that portion of it redacted from the transcript? It wasn't, it's in the transcript. It's not clear when that consent was signed. When the consent was signed? Yes. Your Honor, it's in the transcript that the officers confronted Hernandez and asked him to sign the consent. Can you refer this court to what portion of the transcript it indicates that there was a signed consent? Your Honor, I can check my brief to see the portion of the transcript where the officers confronted him with this and where he agreed, and that's where it indicates where he signed it. When the consent was signed. That is when the consent was signed. And the police subsequently searched this car because he didn't need to consent. That was something that came up. It was his uncle's car. The police realized that ultimately they did not need Hernandez's consent to search the car. But he still signed the consent. He did because he was in an interrogation room being pressured to do so and asking for an attorney. This is all in the transcript. When the interrogating detectives were asking him if they could search his car, he said, look, I need somebody to advise me here. The detective said, what are you calling me, a liar? Purposefully diverting the attention away from his request for an attorney. Hernandez followed up by saying, you're ignoring me. I don't know the law well. I need somebody here to advise me. I need to talk to somebody. The only person who can advise in that circumstance is a lawyer. If that was not clear, certainly the detectives should have clarified. But that's a request for an attorney and it was ignored. And that's in the transcript. That is a six-hour transcript of the interview. That did not go to the jury. So why that would be redacted, I don't know. The video was redacted. It was the last hour of the interrogation. It went to the jury. It had subtitles on it. The jury didn't need to see the entire interrogation. So in Exhibit 62, the video was redacted. I would like to point out also that Detective Fernandez, the interrogating detective, testified at trial that the purpose of the interrogation was to get Hernandez to confess. He was a suspect. He was being treated as a suspect the whole time. That's the detective's version of events. That indicates he was not free to leave. If there are no further questions, Your Honors, we would ask that you reverse the trial court's denial of the motion to suppress and remand for a new trial or an attenuation hearing, or alternatively find counsel ineffective, preferring to introduce evidence of what happened at the station, which is within the purview of her motion as it's written. Thank you, Your Honors. Thank you, counsel. Thank both of you. And if we seemed a little tense, it's probably the seriousness of the case and the poor representation, certainly that I feel, occurred on both sides. Thank you. We will take the case under advisement. We are adjourned.